15-3447, Citizens in Charge v. Jon Husted, Arguments not to be heard, 15 minutes to 5, and Mr. Cusin for the appellate case. Good morning. Good morning. May it please the court. The district court here ruled that a public official could be held personally liable for monetary damages for simply indicating that he intended to enforce a presumptively constitutional statute. The district court's holding is wrong for three reasons and must be reversed. First, the Secretary of State never actually enforced the challenge statute here, so there's no affirmative act on which to base liability. Second, what the Secretary did do was objectively reasonable and is entitled to qualified immunity. And finally, if the district court's ruling is permitted to stand, the policy implications would have far reach beyond the scope of this case for all executive officials in this circuit. With respect to the first point, the Secretary never actually enforced the statute, so there is no act that could be the basis for... But, you know, the letter exchange, why didn't that suggest that they should incur those costs? They would have to incur those costs. The letter exchange, and just to clarify factually, plaintiff's counsel reached out to the Secretary of State and asked the Secretary's office what its enforcement position would be. As a courtesy to plaintiffs, the Secretary's office sent a letter back indicating that the Secretary's office believed it was required to implement the law and would do so like any other Ohio election law and leave the question of the constitutionality to the courts. Plaintiffs acknowledged throughout their briefing that this is at most a threatened enforcement or a signaling of intent, to use their words. That might be a basis for having standing to bring a challenge against the statute, as plaintiffs ultimately did here, but it's not a basis for a personal liability action. So you would say your letter was encouraging them to file a lawsuit if they want to avoid the expenses? It was not encouraging them to file a lawsuit, but certainly at that point in time... That was their only choice if they didn't want to incur the expenses, right? They had to get a TRO in time to allow them to hire people to do the petition collection. That was absolutely an option available to them, Your Honor. Section 1983 offers a pre-enforcement statutory official capacity suit to challenge and enjoin a statute for the express purpose of preventing any constitutional violation from occurring. Plaintiffs here chose to wait approximately 90 days before bringing suit, but they could have done so on day one and gotten relief before they had any expenditures or there was any actual violation of rights. There is no need to put a Secretary of State or any other executive official in a position of having to choose between facing potential personal liability for simply doing his job, or potentially a mandamus or other action seeking to compel him to do his job, because here the plaintiffs have the control of bringing a pre-enforcement challenge and preventing any violation from taking place. And that actually underscores why this case is fundamentally incompatible with the notion of personal damages. Personal damages are by definition backwards looking and designed to apply where a public official has already taken enforcement action in a way that is so egregious that it can be deemed incompetent. It is not meant to apply, whereas here the Secretary has not yet enforced the statute. Throughout plaintiff's brief, they make clear that their real issue is with the existence of the statute. To the extent that they allege any damages, those damages stem from the statute itself. It would be unfair and contrary to the purpose of a personal capacity suit to hold the Secretary individually liable for the existence of a statute he had no role in passing and has not even taken any independent action to enforce. You seem to suggest, I'm just curious, your position. Do you think the Secretary of State had no discretion under state law not to enforce this? That's correct, Your Honor. Clearly there are, the cases make clear that there are circumstances where there could be a flagrantly, plainly unconstitutional statute. Well if that's true, that means that just eliminates the point. I mean that just establishes discretion. In all but the very, very rare case where every objectively reasonable person could view a statute and understand that it is in fact unconstitutional, a public official is obliged to enforce law. Why wouldn't you say just in general that independently elected officials, of which Mr. Husted is one, they have their oath as well. So the legislature has its, courts have its, executive branch officials have theirs. And I mean, I take it that's what Jennifer Bruner was doing last time. I mean why can't you say, hey, I'm an independently elected official, I have this own oath, and I look at this and I say, I'm not enforcing it. Not because it's grossly or flagrantly necessarily, but I just have my independent duty and I don't think it's constitutional, I'm not enforcing it. Couldn't he have done that? He could not have done that here. State law makes clear that the Secretary of State is obliged to enforce Ohio's election laws. Are you talking about that 76 case? I mean, that's like this really technical case about handing over the mandate from the legislature when there was this change in election. I mean, it's a very different setting from this one. As a statutory matter, Section 35 confers on the Secretary the authority to enforce Ohio's election laws. That's what he is elected to do. And the Ohio Supreme Court has repeatedly made clear that that authority does not include the authority to engage in any kind of analysis of the constitutionality of statutes. That's not part of his authority, and the Supreme Court reiterated that in a different context as recently as this summer. But aren't you saying that the Secretary can do that? That if a statute is flagrantly unconstitutional, then he is making some sort of a determination about constitutionality, is he not? He or she? There are ultimately, at the very rare end of the spectrum, the courts have acknowledged that there can be exceptions where, again, a statute is so obviously unconstitutional that no reasonable person or reasonable official would believe that it was constitutional. That's not the case that we have here. And with respect— I mean, another way of thinking about Chief Judge Cole's question, obviously what makes that your answer be the right one in part is the supremacy clause. So who cares what state law says? If a state official is violating the federal constitution, they're stuck. They can't lean on the state constitution to get out from under their obligations to follow the federal constitution. So all this state law stuff is just irrelevant. I mean, it's just as if the state law says, oh, we presume all statutes are constitutional. Great. They're presumed constitutional, but it doesn't interfere with obligations to uphold federal law. And the question is, when is a statute unconstitutional? When can it be said that the statute is in fact a violation of federal law, and who should make that determination? As the Secretary correctly noted in the letter he sent to Plaintiff's Counsel, the courts are best equipped to engage in the intricate balancing necessary to determine whether a statute is in fact constitutional. Give us some credit. The General Assembly is presumed to engage in a balancing when passing a law, and the executive officials, like the Secretary of State, are obligated to enforce that statute. And it bears emphasizing that, again, this does not mean that a plaintiff does not have a remedy where they believe that a statute is unconstitutional or that their rights are in danger of being infringed upon. In this case, we are simply talking about a personal capacity suit and whether the Secretary can be held personally liable. This does not prevent in any way an official capacity suit that could prevent or remedy a violation of the Constitution if a statute is in fact unconstitutional. Hadn't this particular statute in Natter been reviewed? And hadn't this particular issue that brings itself to our attention here, hadn't this been reincorporated in the revised statute? This court addressed a prior version of the statute that was different in material respects and determined that it was unconstitutional. The statute that is at issue in this case represents the General Assembly's second attempt to achieve the various interests behind the statute. And so, really, what you're saying is this was not a dormant statute that had been sitting around on the shelf somewhere. This had been retooled recently. And I think what you're kind of saying is that the Secretary of State had a right to rely upon this retooled statute for constitutionality. Is that what you're kind of saying? That's exactly right, Your Honor. You said it far better than I did. It was a newly enacted statute that represented the General Assembly's attempt to cure the constitutional defects that this court had identified with respect to the prior statute in the Natter case. And contrary to plaintiffs' claim in their briefing, these were not minor trivial changes. The General Assembly significantly narrowed the scope of the statute. And whether or not those changes in the statute are sufficient to make the statute constitutionality is a different question. I have kind of a mean-spirited question here. So just to warn you, your position is the Secretary doesn't have discretion over enforcing the statute under state law unless it's grossly and flagrantly unconstitutional. That's correct. And yet, after this lawsuit, he's decided not to enforce it. So under state law, that proves an admission he thinks it's grossly and flagrantly unconstitutional. Your Honor, the Secretary of State has not decided not to enforce the statute at issue. Whoa, whoa, whoa. He's not defending it. There's an injunction. He's not defending it. You just said he can only do this when it's grossly and flagrantly unconstitutional. With respect, there are two separate questions at issue. The Secretary of State is obligated to enforce a statute unless there has been a court order indicating otherwise. And that is the case here. The district court did preliminarily enjoin and ultimately convert that to a permanent injunction. So the Secretary no longer can enforce that statute under the court's order. Even though there's a case appeal – there's still an appeal of the same case? I mean, the same case is being appealed. That's correct. You're throwing overboard the constitutionality question, presumably because it's flagrantly and grossly unconstitutional. For purposes of this appeal, the only issue is the qualified immunity determination because that's the only issue that could be immediately appealed. The case has not reached a final disposition, so there still could potentially ultimately be an appeal. Isn't there an injunction? There is an injunction in place. Injunctions are appealable. But the issue here is simply whether or not the district court was correct in denying summary judgment to the Secretary of State. You may still defend the constitutionality of the statute? I did not think that was the state's position now. And I think there's a procedural point to clarify here. The Secretary of State has challenged throughout the personal liability claims that plaintiffs set forth in their complaint. If the court is asking sort of the separate question of whether or not the Secretary defended the constitutionality in court, it is true that a separate party, the AG's office actually separately intervened to address the merits of the statute, as state law permits the AG to do. But whether a secretary ultimately decides to take a particular position in court is a very different question than whether or not— It's the Secretary's responsibility not to defend it anymore. Is that the point you're making? I believe what I'm trying to say, and I apologize if I'm not clear— They may still defend it? They absolutely could still defend it. It's our understanding at this stage of the proceeding— And the Secretary of State may still enforce it? If the—enforce or defend. As long as the injunction is in place, the Secretary cannot enforce. But yes, if ultimately the court's injunction were overturned, then certainly the Secretary would enforce that law like any other election law in the state of Ohio. Separately, the question of whether or not it would be defended is a question that would be determined upon the final conclusion of the district court proceedings. For this appeal, the only issue is whether or not the Secretary of State can be held personally liable. And with respect to that, it's important to note that even if the district court was correct that the statute is unconstitutional, that's not enough to hold the Secretary personally liable. Qualified immunity protects all but the plainly incompetent to ensure that executive officials have breathing room to make their decisions. And even if this court believes that this statute is unconstitutional, this is not a case where the Secretary's belief that he was required to enforce state law consistent with his statutory duties can be deemed plainly incompetent. I just have one minor question about the record, really, pretty technical question. You know, you argued today that the Secretary took no action to enforce the statute. But it's not clear to me that that argument was made in the district court. It looks as though the district judge did not address it in any event. Am I correct about that? I believe it is a nuance within what was argued in the district court. At the district court, the Secretary did, in fact, make the argument that there had been no action that would be a basis for personal liability. That is something that we have expanded upon in this brief, but it would be included within the arguments that were made below in challenging the personal liability. Seems to be quite a nuance or fine point because one could certainly interpret his position in the district court as having taken some action toward enforcing the law. And with this argument not having been made to the district court, one could see how perhaps the district court did not address it. The district court spent the bulk of his decision focusing on the similarities between the two statutes, which is the question that ultimately relates to whether or not the new statute is constitutional in light of this court's prior holding. Whether or not the Secretary can be held personally liable for believing that he was obligated to enforce the statute is a separate question and requires a focus on what the Secretary himself did. And so that includes the totality of the circumstances, including whether or not he actually enforced the statute. Thank you. Thank you. You'll have your full rebuttal time. Mr. Thompson. Thank you, Your Honors. Maurice Thompson, 1851 Center for the Plaintiff Appellees, Cincinnati for Pension Reform, most prominently as to this issue. Your Honors, the questions raised in this appeal are really whether state officials can, without consequence or accountability to the victims, ignore the Constitution, ignore federal court decisions, ignore Section 1983's plain language, and even ignore past directives by previous office holders of that same position, and instead, with careful deliberation, with plenty of time and lots of resources, violate Ohioans' clearly recognized constitutional rights, all in willfully blind reliance on the state legislature. Has the U.S. Supreme Court ever said that you can be exposed to personal money damages, so no qualified immunity in a setting where a statute is being enforced, whether federal or state, and it hadn't been declared unconstitutional before they acted? I just don't know of that case. Well, the Supreme Court — I know what DeFilippo says, which is grossly and flagrantly, but, of course, that's one where it didn't happen. So where's the case where it happened, where they denied qualified immunity, even though it was presumptively a constitutional statute and hadn't yet been invalidated? Your Honor, the answer is I can't say with certainty whether that exact case has reached the Supreme Court. What I can say is that we can surmise that 2 plus 2 equals 4, and that the Supreme Court has clearly said that executive officials can be liable for enforcing statutes. Section 1983 itself says that, under color of a statute, expressly uses the word statute. So Congress has said that executive officials can be liable when enforcing statutes as well as a policy outcome. And then we have lots of circuit decisions that fill in the other half of the equation, where officials, of course, are liable for enforcing statutes of one kind or another. Yes, Your Honor. I don't know. It just seems to give some credence to their argument that this is not an everyday thing for federal courts to do. Certainly, Your Honor. This is not an everyday case, and we're not arguing that it's an everyday, ho-hum, run-of-the-mill case. It's an important case with a number of important questions. And the district court did rule in our favor, and we think they were reasonable in doing so, because executive officials can't enforce all of this body of federal court's precedent, either in the abstract or here. That's why the district court was correct, and that's why the proper course of action is to remand for a damages hearing, because, after all, most of the state's arguments are really factual questions about causation, the amount of damages, the duty to mitigate. All these arguments are factual issues that the court never reached in responding to their two-page motion for summary judgment on qualified immunity, which had no evidence or affidavits whatsoever attached to it. Do you agree that grossly and flagrantly unconstitutional standard applies? Your Honor, I would take the edge off that a little bit, and I would say two things. One, certainly this court's precedent is not using that language all the time. And then secondly, even if it does apply, we still prevail in this case. So first, and I'm looking at Bible Believers on Bonk just recently here, where both sides can see that fair notice is really the touchstone of qualified immunity. The beyond debate standard is the constitutionally established beyond debate. This court said in Cincinnati v. Kennedy, generalized statements of law. Bible Believers, though, wasn't about the validity of a statute, right? Right. Right, absolutely. Generalized statements of law can also inform the qualified immunity analysis and that a specific intent is not required. So I would take the edge off that standard, and clearly we prevail under that standard. But even if you want to move to the grossly and flagrant standard, we still prevail because of this court's decision in Nader alone, but also its incorporation of other decisions that stand for the same principles. So the Sixth Circuit was very clear in Nader. It incorporated the law from Myers v. Grant that said initiative petition speech is core political speech, first of all. So the strongest protections apply. Second of all, it quoted Buckley from the Supreme Court that initiative petition speech is co-equal, in terms of the protection required, to candidate and petition speech. So we know those two are co-equal just from looking at Nader alone, not to mention those two Supreme Court precedents. And what the Sixth Circuit then says is that the residency requirements violate the Constitution. Residency requirements for initiative petitions are unconstitutional. And that's what we're arguing in- Presidential elections. That's Nader, right? Correct, Your Honor. You know, the initiatives, you could argue, might be different from presidential elections. Well- One's very local, one's not. A couple of responses, three responses to that, Your Honor. First of all, the United States Supreme Court, at least, has said that, and the Sixth Circuit incorporated, that those two aren't different. The initiative petitions, the quote is, initiative petition circulators also resemble candidate petition signature gatherers, for both seek valid access, therefore both are protected. So they have co-equal status, and the harm is the same. It's a reduction in the overall quantum of speech available, which is a severe burden, triggers strict scrutiny. It's a content-based restriction, of course. We have circuit courts all over the country that looked at issues, looking at the residency requirements for initiative petition circulators, and they've used Buckley, and they've used Myers, and they've used this Court's Nader decision to basically say the same thing, that for initiative petitions, these requirements are also unconstitutional, and they've also said so for local candidates as well. So if you have a local congressional, the Seventh Circuit had an in-district residency requirement, and they invalidated that for the same reasons, that people from out of state couldn't help gather signatures to put this candidate on the ballot. So it's a distinction without a difference. Think about it this way, Your Honor. If the Ohio General Assembly were to promulgate a law that says Asian Americans cannot vote, obviously unlikely, but take this scenario. Isn't that pretty easily grossly and flagrantly? Yes. Yes, it is gross, and this is similarly gross for the reason that we've never, as far as I'm aware, we've never had a case where the United States Supreme Court has said, well, Asian Americans obviously have the right to vote. Those plaintiffs may have been of a different race, but obviously that principle carries over, irrespective of the race of the plaintiffs in the other case. The principle applies much the same here, and to treat initiative petition – I don't think that helps you because the principle in your hypothetical is a strict scrutiny principle, and here, when it comes to this, you look at the cases in this area, it's interest balancing, and it's pretty hard to figure out exactly what's going to happen next with the next challenge. Well, Your Honor, all the circuits, all the circuits have said that strict scrutiny applies, and when strict scrutiny applies, and particularly when – So the Eighth Circuit applied strict and just said it was satisfied? Well, the Eighth Circuit said there was no evidence, so they had no way of ruling in the plaintiff's favor, and then every other circuit has gone the other way since then, including courts within the Eighth Circuit. The district court in the Eighth Circuit in Nebraska disagreed with the Eighth Circuit and kind of recognized that was old law, dead letter. So the point of my analogy, though, is that it's saying that initiative petition circulation and candidate petition circulation are constitutionally distinct or different. What would it be like saying the voting rights of Asian Americans and African Americans are constitutionally distinct and different for the purposes of equal protection law, which is obviously grossly and flagrantly unconstitutional to make that distinction elsewhere. It's the same here. And by the way, these laws are presumptively invalid. They attack the content of speech, and they attack the speaker based on their identity, and those laws have been held by the Supreme Court over and over again to be presumptively invalid. Content-based regulations are presumptively invalid. They're selective and categorical. That's Cincinnati Discovery Network. I mean, it's RAV. It's Playboy Entertainment. It's SORL, a virtual per se rule of invalidity and a presumption of invalidity. This argument by the state may have been forfeited below, but just out of curiosity, once you got the letter from Secretary Houston, why not seek the TRO? Why not at that point avoid that expense? I mean, that's the reason you're allowed to seek TROs and injunctions. Your Honor, I'm glad you asked, and there are quite a few answers to that. First of all, that argument by them, this is, I guess, an interlocutory matter if they still want to appeal the substantive claim, but that means that all facts are construed in our favor as to causation, and the issue of whether we properly mitigated our damages would be relevant to the damages issue and to liability. I think the argument is there's no constitutional violation because, you know, it was ultimately enjoined before the, you know, it was enjoined in time to avoid costs except for the fact, pre-enforcement, you incurred those costs based on the letter, and I'm just making the point. It's a causation point. The letter allowed you to solve the problem. Then let me more directly address your question. The more direct answer to your question is that we had 16 days after the Secretary of State sent the letter before the signatures were due, only 16 days. One principle that Citizens United stands for that most all can agree on is the notion that you do not need a campaign finance attorney in order to engage in the political process. So we're talking about a volunteer campaign effort up front, Cincinnati for Pension Reform, that wasn't even aware of this law until they contacted me. I wrote the letter to the Secretary. He wrote back. And so what the AG is basically arguing from kind of an ivory tower perspective is that every grassroots activist group should have a constitutional rights lawyer on speed dial ready to file a TRO the very next day before their signatures are due, and that just wasn't physically possible here. It's not possible most of the time. They don't have a lobbyist at the Statehouse to let them know a law that hurts their interests are being passed. Not every citizen is required to have a lobbyist and a constitutional rights lawyer to participate in the political process. And it takes time to prepare these cases. We prepared it right. We prevailed in the case. And the idea that I get this letter, which, frankly, I was shocked to receive, Secretary of State Bruner had issued a directive declaring this very law unenforceable because it was constitutionally suspect. And we thought the Secretary of State would simply continue that policy. And, by the way, if he had, there's a remedy available. If he had erred on the side of constitutional rights and on the side of this court's precedent, any Ohioan could bring a state XRL claim, a mandamus claim, in the Ohio Supreme Court to force him to enforce the law. In fact, they can bring it in any court. But no Ohioan ever brought that claim against Jennifer Bruner in the four years that she suspended the enforcement of this law. And probably no Ohioan would have brought that here. So the short answer is we were very surprised when the Secretary of State basically promised that he wouldn't validate those signatures if we were to submit them from out-of-state residents. And 16 days is just not enough to prepare a major challenge to a state statute. I'll bet if you'd gotten a letter back saying we're not going to enforce the voting rights law against Asian Americans, you would have filed your suit pretty quickly. Well, Your Honor, I can't speak to that. But I know that 16 days is a very short playing field. And no, there's not any case that I could file 16 days from now if you called me today and told me that I had to file it. That's just not true. But I would also say while we're talking about those letters, the Secretary of State had all kinds of information available to him, $21 million annual budget, a team of lawyers, so a larger budget probably than any of the court's judges have, more lawyers on staff than any of the court's judges have most likely, and plenty of time. He had a week to think about it. So there was lots of time to deliberate and decide what the Secretary of State was going to do going forward. And that also makes this not like any of the police cases where there's imminent danger and a quick split-second decision is required on the spot. What we have here is really the opposite of that. And so importantly, what I heard, the second point from the opposing counsel was, the Secretary of State acted objectively, reasonably. Well, I've read 60 pages of briefs now. I've heard 15 minutes of arguments. I've never heard one single argument for the constitutionality of this residency restriction. I've never heard the Secretary of State once or the Attorney General's office argue once that he acted objectively, reasonably because there's a reasonable distinction between these laws. That has never been argued in any of these briefings, any of this point. And so it might be one thing if the Secretary had deliberated for a week and come up with a novel legal theory or some novel evidence and then maybe attach that as an affidavit to his motion for summary judgment or made that argument in the lower court. That didn't happen here. I've heard no argument to this point on why it's objectively reasonable to believe that this law is constitutional when, in fact, circuit after circuit and the Supreme Court, by inference, has pretty clearly said that residency requirements on petition circulation are clearly unconstitutional. So when you look at all of those factors and also the fact that Section 1983 applies directly to statutes and the enforcement of statutes, what you see really is that the remedy that is sought by the Attorney Generals here lies with Congress and Section 1983 or with the Supreme Court and not with this court. This law is clearly established, and that really begins and ends the analysis. And, again, the motion for summary judgment they made was just two pages, and to the extent there are these causation issues or these factual issues, well, the AG's office has forfeited the right to argue over those things. Those are issues for a damages hearing, and so what we're asking is that the court remand the case for that damages hearing where we can get this case wrapped up. Thank you. Okay. Thank you, Mr. Thompson. You've got your full rebuttal. To follow up on the last point that Plaintiffs' Counsel made with respect to whether or not there are factual issues, there are no factual disputes. Giving plaintiffs' complaint and the allegations the most generous reading, the only allegation they make with respect to the Secretary is that he issued the letter. I respectfully disagree that there is any forfeiting of the argument that the Secretary has not acted in a way that could be a basis for monetary damages. That is part of the totality of the circumstances that would relate to whether or not qualified immunity is appropriate in this case. But it's important to note that qualified immunity here does not turn on whether or not the Secretary ultimately enforced. Even if the Secretary's conduct could be deemed enforcement, he would still be entitled to qualified immunity. As this court noted, there is no Supreme Court case or any other case that has held a public official liable for enforcing a presumptively constitutional statute that he or she is charged with enforcing. The closest fact pattern that we see among the courts is the fact pattern in the Second Circuit crotty decision. In that case, as in this case, the court considered whether a public official's enforcement of a new law that closely resembled a prior law that had been deemed unconstitutional was a basis for holding the official personally liable. The court concluded that the new statute was unconstitutional for the same reasons that the prior one was unconstitutional, but it nonetheless refused to hold the official personally liable. And in doing so, the court persuasively explained the problems that would arise if an executive official were required to engage in the type of balancing that courts engage in in determining whether a statute is unconstitutional. Plaintiff's counsel made the point himself. If the Secretary had done here what plaintiff's counsel urged him to do, he likely would have faced a mandamus action. Mandamus actions are common, and an executive official shouldn't have to make that choice between two, as the court put it, equally hazardous and potentially litigious options. Moreover, it could have some serious policy implications for the General Assembly. In essence, an executive official would not only be licensed, but compelled on pain of personal damages to essentially veto a law that the General Assembly had passed. And unlike the veto power that is actually set forth in the Constitution, the General Assembly would have no basis to override that executive veto by the executive official charged with enforcing the statute. I want to follow up briefly on the point with respect to prior Secretary Bruner's directive. Plaintiff's counsel suggested that this directive invalidated the current law or somehow related to the current law. That directive predated this law by several years. The new law that's at issue in this case was passed in 2013. That directive came out following the Nader decision and related to the law that was in place at that time and found that based on the Nader decision, the prior law could not be enforced. Jennifer Bruner did not issue any directive with respect to the current law. She was not in office at that time. So there is no suggestion or should be no suggestion that prior Secretaries of State somehow had the discretion to declare the current law or did declare the current law unconstitutional. Well, you'll need to wrap up because you're... Thank you, Your Honor. Ultimately, qualified immunity exists to penalize an official when they have acted so wrongly that they can be called incompetent. Here, the Secretary of State did exactly what an executive official in his shoes should do. He enforced or indicated he would enforce the law the General Assembly passed and he left the constitutionality of that to the courts. He is entitled to pay for that. Okay. Thank you, counsel, both of you, for your arguments today. Again, we really do appreciate them. Sorry we had a bit of a delay, but it was beyond our control.